UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CARDAL HAYES | CIVIL ACTION |
| VERSUS | NO. 14-2871 |
| MARLIN N. GUSMAN, ET AL. | SECTION "A"(1) |

## REPORT AND RECOMMENDATION

Plaintiff, Cardal Hayes, a state pretrial detainee,[1] filed this civil action pursuant to 42 U.S.C. § 1983 against Sheriff Marlin N. Gusman, Mr. Gibson, Ms. Weaver, Bonita J. Pittman, Ms. Fare, and Ms. Steele. In this lawsuit, plaintiff challenged the conditions of his confinement within the Orleans Parish Prison system.

To better understand the factual bases of plaintiff's claims, the Court held a Spears hearing on March 25, 2015. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

At that Spears hearing, the Court also ordered defense counsel to submit certified copies of plaintiff's medical and grievance records. Those records have been produced and filed into this federal record,[2] and copies have been provided to plaintiff for his use in this proceeding.

---

[1] Rec. Doc. 1, p. 3.

[2] Rec. Doc. 14.

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[3] Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory,

---

[3] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).  The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Broadly construing plaintiff's complaint,[4] and fully considering his Spears hearing testimony, the undersigned finds that plaintiff is asserting the following claims challenging the conditions of his former confinement within the Orleans Parish Prison system[5] as a pretrial detainee:

---

[4] The court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

[5] After filing this lawsuit, plaintiff was transferred to the Nelson Coleman Correctional Center in Killona, Louisiana, in St. Charles Parish.

1. The jail was unsanitary, with mold and rust, and lacked basic fire safety measures or plans.

2. Plaintiff and his fellow inmates were denied outside recreation for two or three months at a time.

3. Plaintiff received inadequate medical care for a spider bite.

It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted). Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of mere inconveniences. Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979); Ruiz v. El Paso Processing Center, 299 Fed. App'x 369, 371 (5th Cir. 2008). As explained below, it is apparent that plaintiff's complaints regarding the conditions of his confinement concern inconveniences which do not constitute "punishment" or otherwise rise to the level of constitutional violations.

Concerning the generally unsanitary conditions, plaintiff's allegations fall far short of what is required to state a nonfrivolous claim. Obviously, there is a point beyond which a prison's conditions are so unsanitary as to render them unconstitutional. See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional). That said, it must be remembered that, although prisons should be reasonably

clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."). While the conditions described by plaintiff may be unpleasant, they are not so egregious as to be unconstitutional.

Plaintiff's claim concerning the presence of mold fares no better. The jurisprudence has repeatedly held that the mere fact that mold is present does not render an inmate's confinement unconstitutional. See, e.g., Eaton v. Magee, Civ. Action No. 2:10-cv-112, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); Barnett v. Shaw, No. 3:11-CV-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), adopted, 2011 WL 2214383 (N.D. Tex. June 7, 2011); Reynolds v. Newcomer, Civ. Action No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (plaintiff's complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

Similarly, plaintiff's allegation that rust was present also fails. The presence of rust in a jail does not rise to the level of a constitutional violation or otherwise warrant relief in a federal civil rights action. See, e.g., Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015); Simmons v. Gusman, Civ. Action No. 14-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015); Penn v. Jones, Civ. Action No. 13-0830, 2014 WL 31351, at *2 (W.D. La. Jan. 2, 2014).

In summary, the Court notes that it is not unsympathetic to plaintiff's complaints concerning the unsanitary conditions. However, for the reasons explained herein, the issue before the Court is not whether the conditions of plaintiff's confinement were unpleasant or uncomfortable – rather, it is only whether the conditions were *unconstitutional*. Although the conditions alleged in this case left much to be desired, they simply were not unconstitutional. Accordingly, these claims concerning the general conditions of confinement should be dismissed.

Plaintiff next complained that the jail lacked basic fire safety measures or plans. Even if that allegation is true, it does not necessarily follow that his constitutional rights were violated. See, e.g., Billizone v. Jefferson Parish Correctional Center, Civ. Action No. 14-1263, 2015 WL 1897683, at *4 (E.D. La. Apr. 27, 2015). While fire codes "can be helpful in determining whether a lack of fire safety" rises to the level of a constitutional violation, such codes "are not determinative." Johnson v. Texas Board of Criminal Justice, 281 Fed. App'x 319, 322 (5th Cir. 2008). Moreover, where, as here, an inmate does not "allege that anyone had been injured by any type of fire or that [the jail] was built from flammable materials or was particularly susceptible to fires, his allegations do not state a viable claim." Id.; accord Hunnewell v. Warden, Main State Prison, No. 93-1917, 1994 WL 52643, at *4 (1st Cir. Feb. 23, 1994) ("[N]ot every deviation from ideally safe conditions constitutes

a violation of the constitution. Moreover, even liberally construed, plaintiff's complaint that his cell is unsafe due to fire hazards is conclusory and fails to state a claim under § 1983." (citation omitted)); Sampson v. King, 693 F.2d 566, 569 (5th Cir. 1982) ("In operating a prison, however, the state is not constitutionally required to observe all the safety and health standards applicable to private industry. Nor is it bound by the standards set by the safety codes of private organizations. Standards suggested by experts are merely advisory. A federal court required to gauge the conduct of state officials must use minimum constitutional standards as the measure." (citations omitted)); Patin v. LeBlanc, Civ. Action No. 11-3071, 2012 WL 3109402, at *17 (E.D. La. May 18, 2012), adopted, 2012 WL 3109398 (E.D. La. July 31, 2012); Davis v. St. Charles Parish Corr. Center, Civ. Action No. 10-98, 2010 WL 890980, at *7 (E.D. La. Mar. 8, 2010); Jernigan v. Dretke, Civ. Action No. H-04-4672, 2005 WL 1185627, at *3 (S.D. Tex. Apr. 29, 2005) ("At the most, Jernigan has alleged a condition that may violate local fire codes. The prison does not violate the Constitution if it fails to comply with all health and safety standards. Although the situation Jernigan describes is far from ideal, it is not so patently egregious or clearly dangerous that the prison officials could be found to be deliberately indifferent if they allowed it to continue. No actual harm has been alleged, and Jernigan's speculative worries do not establish a claim." (citations omitted)). Accordingly, this claim should also be dismissed.

Plaintiff's allegations that he and his fellow inmates were denied outside recreation for two or three months at a time likewise fail to state a nonfrivolous claim. Even severe restrictions on or complete denials of outdoor recreation have been found to be constitutional. See, e.g., Chavis v. Fairman, No. 92-C-7490, 1994 WL 55719, at *5 (N.D. Ill. Feb. 22, 1994) ("Generally, even dramatic restrictions on outdoor exercise do not violate the Eighth Amendment (or due process, where pretrial

detainees are at issue) so long as prisoners have ample opportunity to enjoy indoor activity."), aff'd, 51 F.3d 275 (7th Cir. 1995); Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *9 (E.D. La. May 11, 2010); Broussard v. Phelps, Civil Action No. 86-2126, 1987 WL 18153, at *3 (E.D. La. Oct. 6, 1987) (no constitutional deprivation shown where prisoner was allowed outdoor recreation only twice in a seventeen month period in light of the fact that he was allowed to leave his cell for an hour each day and cell was large enough for indoor exercise).  Therefore, this claim should also be dismissed.

Lastly, plaintiff complained that he was denied adequate medical care for a spider bite on his head.  Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail.  However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities.  See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).  *Even if* plaintiff's spider bite rose to the level of a serious medical need,[6] his allegations are nevertheless still insufficient to state a claim of deliberate indifference.

---

[6]  The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).  It must be noted that "[c]ourts have been reluctant to hold that a spider bite is a serious medical need." Hubbard v. Denmark, Civ. Action No. 1:13-CV-498, 2014 WL 4384328, at *4 (S.D. Miss. Sept. 3, 2014); accord Davis v. Gusman, Civ. Action No. 11-2731, 2012 WL 3150047, at *3 (E.D. La. Aug. 2, 2012); Boykins v. Orangeburg County Jail, Civ. Action No. 5:12-114, 2012 WL 1835755, at *3 (D.S.C. Mar. 27, 2012), adopted, 2012 WL 1836115 (D.S.C. May 21, 2012); Hye v. Broadus, Civ. Action No. 1:08-cv-220, 2009 WL 3259130, at * 12 (S.D. Miss. Oct. 8, 2009).

Regarding the "deliberate indifference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In the instant case, the Court has obtained and reviewed a certified copy of plaintiff's medical records from the Orleans Parish Prison system. Those records document the following medical complaints and care related to the spider bite:

| | |
|---|---|
| 7/2/14 | Plaintiff submitted a sick call request complaining of a spider bite on his head. He was referred to the jail doctor. |
| 7/8/14 | Plaintiff was seen in the jail medical department complaining of a spider bite. The examination revealed a small open wound on his head (1 cm x ½ cm x ½ cm); the wound was "clean [with] no purulent discharge." He was prescribed Clindamycin and Bactraban ointment, both of which are antibiotics, and Ultram, a pain medication. |
| 7/15/14 | Plaintiff was prescribed Bactrim, an antibiotic, and Ibuprofen for pain. |

| | |
|---|---|
| 7/21/14 | Plaintiff was seen in the jail medical department for a follow-up visit regarding his spider bite. The examination revealed no redness or inflammation, and it was noted that the wound was healing as expected. He was prescribed Tylenol for pain. |
| 9/12/14 | Plaintiff was seen in the jail medical department complaining of headaches. He was prescribed Piroxicam, a nonsteroidal anti-inflammatory drug. |
| 9/25/14 | Plaintiff submitted a sick call request complaining that the medication for his headaches was not working. He was referred to the jail doctor. |
| 9/30/14 | Plaintiff was seen in the jail medical department complaining of headaches and requesting Naproxen, a nonsteroidal anti-inflammatory drug. He was prescribed Naproxen as requested. |
| 10/10/14 | Plaintiff was seen in the medical department complaining that the Piroxicam once per day helped but did not resolve his headaches and requesting that he instead receive the medication twice per day. His prescription was changed to twice per day as requested, and he was additionally prescribed Esgic, a combination of a barbiturate, acetaminophen, and caffeine used to treat headaches. |
| 11/19/14 | Plaintiff was seen in the medical department complaining of headaches. His prescriptions for Piroxicam and Esgic were discontinued, and he was instead prescribed Meloxicam, a nonsteroidal anti-inflammatory drug. |

It is clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). That is the case here.

Clearly, plaintiff's complaints regarding his spider bite and associated headaches were not ignored. On the contrary, he was examined within a few days of submitting a sick call request, and he was treated with a variety of antibiotics and pain medications over the course of several months.

In light of that ongoing treatment, it is unclear what additional medical care plaintiff believes was necessary. However, even if he believes that more should have been done for him, that is of no moment. Absent exceptional circumstances, an inmate's disagreement with his medical treatment simply does not constitute deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). And, as already noted, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). Generally, such matters of professional medical judgment are better left to the expertise of medical personnel rather than to the legal expertise of judges. Federal courts are therefore reluctant to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is no basis whatsoever to engage in such second-guessing here.

The foregoing conclusion is not changed by the fact that plaintiff's headaches remained unresolved. Where, as here, an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because pain persisted despite the treatment. Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

Nor is the foregoing conclusion changed by the fact that plaintiff's medical care "may not have been the best money could buy." Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or medical malpractice present issues of *state* law for *state* courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the determinative issue before the Court is not whether the medical treatment plaintiff received for his spider bite and headaches was subpar in some respect, whether his medical problems persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only

12

whether he had a serious medical need which was met with deliberate indifference. He did not. Accordingly, his medical claim should be dismissed.

### **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[7]

New Orleans, Louisiana, this fifth day of May, 2015.

                  **SALLY SHUSHAN**
                  **UNITED STATES MAGISTRATE JUDGE**

---

[7] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.